1   Nathan Shaffer (CA SBN 282015)
    nshaffer@orrick.com
2   ORRICK, HERRINGTON & SUTCLIFFE LLP
    405 Howard St
3   San Francisco, CA 94105
    Telephone: +1 415 773 5700
4
    Angela Colt (CA SBN 286275)
5   acolt@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE LLP
6   51 W 52nd St
    New York, NY 10019
7   Telephone: +1 212 506 5000
8   Jake O'Neal (CA SBN 332827)
    jake.oneal@orrick.com
9   ORRICK, HERRINGTON & SUTCLIFFE LLP
    355 S Grand Ave, Ste 2700
10  Los Angeles, CA 90071
    Telephone: +1 213 629 2020
11
12  *Attorneys for Plaintiff*
    Williams-Sonoma, Inc.
13

14                  UNITED STATES DISTRICT COURT

15                NORTHERN DISTRICT OF CALIFORNIA

16                   SAN FRANCISCO DIVISION

17

18  WILLIAMS-SONOMA, INC.,                Case No. 3:25-cv-10118

19                     Plaintiff,          **COMPLAINT FOR:**

20            v.                           1.  **False Advertising in Violation of 15 U.S.C.**
                                               **§ 1125(a)(1)(B);**
21  LAST BRAND, INC. D/B/A QUINCE,
                                           2.  **False Advertising in Violation of Cal. Bus.**
22                     Defendant.              **& Prof. Code § 17500, *et seq.*;**

23                                         3.  **Unfair Competition in Violation Cal. Bus.**
                                               **& Prof. Code § 17200, *et seq.*; and**
24
                                           4.  **Restitution Based on Quasi-Contract**
25
                                           **DEMAND FOR JURY TRIAL**
26

27

28

Plaintiff Williams-Sonoma, Inc. ("WSI") submits the following Complaint against Defendant Last Brand, Inc. d/b/a Quince ("Quince"). WSI alleges as follows:

**INTRODUCTION**

1.      Founded in 1956, Williams-Sonoma, Inc. ("WSI") is a premier specialty retailer of high-quality products for the kitchen and home. That year, WSI's founder Chuck Williams converted a hardware store in Sonoma, California to introduce the French cookware he experienced during a post-war trip to Paris to American kitchens and homes. For nearly seven decades since Chuck opened that first storefront, WSI has maintained his commitment to sourcing and curating premium quality products that are expertly crafted and combine style and functionality. The quality of WSI's products, its ability to identify opportunities in the market, and its customer-obsessed approach has facilitated WSI's expansion beyond the kitchen into every area of the home. Now, in addition to its original eponymous Williams Sonoma® brand, WSI's family of brands includes Pottery Barn®, Pottery Barn Kids®, Pottery Barn Teen®, West Elm®, Williams Sonoma Home®, Rejuvenation®, Mark and Graham®, and GreenRow® (collectively, the "WSI Brands").

2.      Unlike many of its competitors, WSI designs and develops the overwhelming majority of its home furnishing products in house. Except for its Williams Sonoma brand (which features curated products from trusted partners like Le Creuset® and Breville®), over 90% of the products sold by WSI Brands are developed by WSI's in-house professionals and exclusive to WSI. Each season, WSI's in-house professionals create original and exclusive collections of products that embody each distinctive WSI Brand. WSI's multi-phase product design and development process for a single piece of furniture customarily takes a year from concept through sampling, to refining, until being introduced on the market. WSI does not license its designs or distribute its products for sale through other retail brands or through third-party online marketplaces.

3.      As part of its product development process, WSI selects vendors to bring its designs to life based not only on their manufacturing capabilities but also on meeting certain corporate responsibility and sustainability standards, including using sustainable materials and following ethical manufacturing processes. WSI is proud to be the only exclusive home-furnishings retailer ranked among Barron's 100 Most Sustainable U.S. Companies (for eight years in a row). WSI is also one of

only nine (out of 127) furniture retailers recognized in 2023 as a "Sustainable Furnishings Council Wood Furniture Top Scorer" for its usage of FSC® certified wood. In 2024, Newsweek named WSI one of America's Most Responsible Companies.

4.     When a customer considers buying a piece of furniture from a WSI Brand like Pottery Barn or West Elm for their home, they are offered more than just a thoughtfully designed product. WSI—unlike online-only retailers—operates a fleet of over 500 brick-and-mortar stores nationwide, which allows customers to see and experience products in-person or ask one of WSI's dedicated store associates a question, so that customers can make purchases with confidence. WSI also offers free in-home design services, white-glove delivery services, and on-demand customer service support worldwide to help answer questions both before and after purchase. In short, purchasing a product from a WSI Brand involves more than just ordering something that looks good online. WSI is committed to providing customers with high-quality, sustainable products and competing in the marketplace fairly.

5.     Quince is a direct-to-consumer retailer that launched in or around 2020. It is known as a "dupe brand." That is, Quince purports to sell products that are the same as "luxury" goods from companies such as WSI, but cost less. As the Wall Street Journal recently explained, Quince copies a "hot item" and then tries to make it cheaper. Chavie Lieber, *Quince Knows What You're Looking For. And It's Making It Cheaper*, The Wall Street Journal (Nov. 13, 2025), https://www.wsj.com/style/fashion/quince-retailer-sweaters-clothing-online-shopping-f83d16fd?mod=fashion_news_article_pos2, attached as Ex. A. Quince adds "200 new items to its site every month." *Id.* Quince originally sold dupe clothing, towels and linens, and bedding. It then expanded into handbags, jewelry, and luggage. More recently, Quince started offering rugs, furniture, cookware, kitchenware and tabletop items, and—as of this year—lighting. Quince now even sells skincare, perfumes, beauty products, and health supplements.

6.     Unfortunately, Quince's customers regularly discover that Quince's goods are nowhere near the same quality as the products it purports to mimic—including WSI's products—in terms of design, materials, and craftsmanship. As described in the New York Times: "Quince is reaching for prestige … but … what they're actually providing is a little closer to Target quality[.]" Annemarie

Conte, *My Month of Living Quince's Low-Cost Life of Luxury*, New York Times | Wirecutter (Apr. 10, 2025), https://www.nytimes.com/wirecutter/reviews/my-month-testing-quince-products/, attached as Ex. B. Or as described in the Wall Street Journal: "Quince's savings are happening in production." Ex. A (citing Melanie DiSalvo, "apparel and sourcing expert who works with multinational retailers"). "They use less fabric, it's not the best sewing, [and] the seams are puckering … That's where they are cutting corners." *Id.* (quoting DiSalvo).

7. WSI has no problem with fair competition or offering choices to customers. But in order to build a market for its dupe products and drive customers to its website, Quince has engaged in a widespread false advertising campaign against WSI that leverages the significant goodwill of the WSI Brands, falsely represents that Quince's goods are the same as or "like" WSI's products, and fabricates the prices of WSI's products to perpetuate the fiction that customers are paying significantly less at Quince for the same product sold by WSI. The vast majority of WSI's products are designed and sourced in-house, and Quince repeatedly and falsely equivocates its products to these WSI-exclusive products.[1]

8. A major component of Quince's false advertising campaign is its "Beyond Compare" charts, which are featured on almost every product page on Quince's website. In such charts, Quince compares one of its products to a competing brand's product and then claims the customer "saves" money by buying from Quince. For example, below is Quince's Stillman Performance Basketweave

---

[1] Outside of the Williams Sonoma brand, less than 10% of WSI Brands' products come from third-party suppliers, in order to fill certain gaps within a collection. Examples include outdoor firepit tables and picture frames sold by Pottery Barn. WSI's non-exclusive products are not the subject of this suit.

Chaise Sectional (the "Quince Sectional") and associated Beyond Compare chart, wherein Quince

falsely implies the same product is sold by Pottery Barn for $5,148:



*Stillman Performance Basketweave Chaise Sectional*, Quince, https://www.quince.com/home/performance-basketweave-track-arm-chaise-sectional?color=ivory    (last visited 10/13/2025).[2]

9.      In each "Beyond Compare" chart referencing a WSI Brand, Quince never identifies the

specific product that WSI supposedly charges so much more for than what Quince charges, nor does

Quince attempt to substantiate its claim that any WSI product is the same, even though it is required

to do so in order to have a basis for making a comparison. Failure to do so is inherently misleading

and accordingly violates the law.

10.     Even if Quince could substantiate that a specific WSI product were the same, Quince

falsely states WSI's prices. Take, for example, the Quince Sectional discussed above, which is 116"

wide, 70" deep, 34" high, and upholstered in a performance basketweave. *Id.* Quince contends Pottery

Barn sells the same sectional. *Id.* Pottery Barn does sell a sectional that is similar in dimensions (117.5"

---

[2] All annotations to images are added unless stated otherwise.

wide, 62" deep, 36" high) and also made from a performance basketweave, but Pottery Barn's product is exclusive to Pottery Barn:



Quince Sectional on left (116" W x 70" D x 34" H; performance basketweave)
Pottery Barn sectional on right for $3,598 (117.5" W x 62" D x 36" H; performance basketweave)

*Id.*; *Turner Square Arm Chaise Sectional, Sofa + Standard Chaise*, Pottery Barn, https://www.potterybarn.com/products/turner-square-arm-upholstered-chaise-sofa-sectional/ (last visited 10/13/2025).

11.    Presumably Quince considers these two sectionals to be the same. But contrary to Quince's claim, ***the most similar sectional sold by Pottery Barn actually costs $3,598—not $5,148 as advertised by Quince***.

12.    Another example is an email advertisement Quince circulated earlier this year, wherein it introduced "Designer lighting without the designer markup" and claimed customers could "save up to 74% compared to Rejuvenation." Ex. C (Marketing email from Quince, dated 7/7/2025) at 1. Quince

included the below Beyond Compare chart for its "Mid-Century Armed Iron Chandelier" and claimed

customers saved 63% over the same product from Rejuvenation:



*Id.* at 4.

13.     Quince never identifies the product that Rejuvenation supposedly charges so much more for than what Quince charges, nor does Quince attempt to substantiate its claim that any WSI product is the same, even though it is required to do so in order to have a basis for making a comparison.

14.     When directly asked to identify the supposedly "same" Rejuvenation product, Quince identified a Rejuvenation product designed in-house by WSI and built to order at a WSI factory in

Portland, Oregon, which looks nothing at all like the Quince product (made in Vietnam), as it differs in overall shape, materials, and dimensions:

 

| Quince | Rejuvenation |

*Mid-Century Armed Iron Chandelier*, Quince, https://www.quince.com/home/mid-century-iron-chandelier (last visited 11/12/2025); *Brendle Semi-Flush Mount*, Rejuvenation, https://www.rejuvenation.com/products/brendle-3-arm-semi-flush-chandelier (last visited 11/12/2025).

15.     The Beyond Compare charts are just one aspect of Quince's bait-and-switch advertising campaign. Quince uses a litany of false and misleading advertisements against WSI on platforms such as Facebook, Instagram, Pinterest, TikTok, and YouTube.

16.    For example, below are two social media ads where Quince prominently features a WSI Brand together with an image of a product not sold by that WSI Brand, falsely suggesting consumers can purchase the same items at dramatically reduced prices—savings of "half the price" or "63%" off:



17.    The rug featured in the "Like Pottery Barn rugs" ad is not and has never been sold by Pottery Barn.[3] Similarly, the ceramic nonstick cookware set featured in the "Like Williams Sonoma" ad is not and has never been sold by Williams Sonoma.

18.    Notably, Quince fails to mention Pottery Barn and Williams Sonoma in the Beyond Compare charts for the above Quince products. That is, Pottery Barn is not mentioned in the "Beyond Compare" chart when a consumer goes to buy the advertised "like Pottery Barn" rug. *See Lilia Wool Rug*, Quince, https://www.quince.com/home/lilia-rug (last visited 11/20/2025). Nor is Williams

---

[3] WSI has identified 10 area rugs out of the approximately 215 Quince sells that look similar to rugs sold by Pottery Barn. Pottery Barn sells approximately 400 area rugs overall. Quince's ads mislead customers into believing that all of Quince's rugs are generally the same as those sold by Pottery Barn.

Sonoma mentioned in the "Beyond Compare" chart when a consumer goes to buy the advertised "Like Williams Sonoma" ceramic nonstick cookware. *See Ceramic Nonstick 7pc Cookware Set*, Quince, https://www.quince.com/home/ceramic-nonstick-7pc-cookware-set (last visited 11/20/2025).

19.    By brand-washing its ads, Quince creates the false impression that consumers will receive comparable quality and design, when in reality they may be purchasing unrelated items of often inferior quality. When WSI discovered Quince's false comparisons, WSI notified Quince, with the hope that Quince would correct the errors and compete fairly in the marketplace. Instead, Quince doubled down. Quince asserted WSI's claims were "frivolous" and challenged WSI to a legal battle, stating "Quince would welcome a public skirmish."

20.    Unlike Quince, WSI does not seek a legal battle. WSI merely wants to protect consumers from being misled and to foster truthful and fair competition. Indeed, WSI *welcomes* healthy competition and truthful comparative advertising from any and all competitors, including Quince. But WSI will not permit Quince to mislead consumers and disparage its brands with false advertising. WSI, thus, brings this lawsuit.

## THE PARTIES

21.    WSI is a corporation organized and existing under the laws of Delaware and headquartered in San Francisco, California.

22.    Quince is a corporation organized and existing under the laws of Delaware and headquartered in San Francisco, California.

## JURISDICTION

23.    WSI incorporates by reference all the foregoing paragraphs as if fully set forth herein.

24.    The Court has subject-matter jurisdiction over all claims in this action, which arise under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), and the laws of the State of California. The Court has subject-matter jurisdiction over the federal claim pursuant to 28 U.S.C. § 1331 and the state-law claims pursuant to 28 U.S.C. § 1367(a).

25.    The Court has general personal jurisdiction over Quince because its principal place of business is in San Francisco, California. Additionally or alternatively, the Court has specific personal jurisdiction over all claims asserted against Quince, as Quince has established minimum contacts with

California such that the maintenance of this action does not offend traditional notions of fair play and substantial justice. For example, Quince's headquarters is located in California, and Quince hires California residents who perpetrate the false advertising campaign against WSI. Additionally, Quince falsely and misleadingly advertises to California consumers, injuring WSI in California.

## VENUE

26.    Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(1), as Quince resides in this District and is the only defendant in this action.

## DIVISIONAL ASSIGNMENT

27.    This case is an intellectual-property rights action and is subject to district-wide assignment pursuant to the District's Assignment Plan.

## FACTS

**I.    Quince's False Advertising on its Website**

28.    On its website, Quince has repeatedly made (and continues to make) false and misleading comparisons to WSI products, including in its Beyond Compare charts.

29.    For example, as described, Quince advertises its Quince Sectional on its website and claims Pottery Barn charges $5,148 for the same product:





*Stillman Performance Basketweave Chaise Sectional,* Quince, https://www.quince.com/home/performance-basketweave-track-arm-chaise-sectional?color=ivory (last visited 10/13/2025).

30.    Quince's statements are false and misleading because Pottery Barn does not sell the Quince Sectional. A consumer who purchases the Quince Sectional, thus, does not receive a "52% Savings" by purchasing it from Quince instead of Pottery Barn. *Id.*

31.    Additionally or alternatively, Quince's statements are false and misleading because Quince never identifies the Pottery Barn sectional, nor does it attempt to substantiate its claim that any Pottery Barn sectional is the same, despite being required to do before making the false comparison.

32.    In fact, Quince's statements are false and misleading because Pottery Barn does not sell a product that is the same as the Quince Sectional. A reasonable opportunity for further investigation or discovery is likely to show that Pottery Barn's goods—including its sectionals—are higher quality than Quince's. A consumer who purchases the Quince Sectional, thus, does not receive

a "52% Savings." *Id.* Rather, the consumer spends less for an inferior product. *See, e.g.*, *id.* (Customer review on 9/4/2025: "[T]he velvet itself is not at all comparable to … [Pottery Barn]. It's very cheap and it looks truly more like microfiber rather than rich velvet. … The chaise was so overfilled it literally has a hump, meaning that after sitting on it, since it's not down filled, it will most certainly become lumpy. It's already slightly lumpy. … I think in this case you truly get what you pay for. There is a reason why other companies I mentioned earlier charge double and that's because the quality is just that much better.") (punctuation and capitalization edited for clarity).

33.    Further, even if Quince could somehow substantiate that a specific Pottery Barn sectional were the same as the Quince Sectional (it cannot), its statement that Pottery Barn's unidentified same sectional is ***$5,148*** is false and misleading. For example, Pottery Barn's Turner Square Arm Chaise Sectional, configured as a sofa plus standard chaise, is 117.5" wide, 62" deep, and 36" high (similar measurements to the Quince Sectional), made from a performance basketweave, and costs ***$3,598***:



Quince Sectional on left (116" W x 70" D x 34" H; performance basketweave)
Pottery Barn sectional on right for $3,598 (117.5" W x 62" D x 36" H; performance basketweave)

*Id.*; *Turner Square Arm Chaise Sectional, Sofa + Standard Chaise*, Pottery Barn, https://www.potterybarn.com/products/turner-square-arm-upholstered-chaise-sofa-sectional/ (last visited 10/13/2025).

34.    As another example of Quince's false advertising through its website, Quince advertises a queen-sized "Performance Velvet Square Bed" that is upholstered in a performance velvet and has a 48" headboard (the "Quince Queen Bed"). *Performance Velvet Square Bed*, Quince,

1   https://www.quince.com/home/performance-velvet-square-bed-high?color=ocean    (last    visited

2   10/13/2025). Quince claims West Elm charges $1,999 for the same product:



*Id.*

35.     Quince's statements are false and misleading because West Elm does not sell the

Quince Queen Bed. A consumer who purchases the Quince Queen Bed, thus, does not receive a "39%

Savings" by purchasing it from Quince instead of West Elm. *Id.*

36.     Additionally or alternatively, Quince's statements are false and misleading because

Quince never identifies the purportedly competing West Elm bed, nor does it even attempt to

substantiate its claim that any West Elm bed is the same, despite being required to do before making

the false comparison.

37.     In fact, Quince's statements are false and misleading because West Elm does not sell a

product that is the same as the Quince Queen Bed. A reasonable opportunity for further investigation

or discovery is likely to show that West Elm's goods—including its beds—are higher quality than

Quince's. A consumer who purchases the Quince Queen Bed, thus, does not receive a "39% Savings."

*Id.* Rather, the consumer spends less for an inferior product.

38.     Further, even if Quince could somehow substantiate that a specific West Elm bed were

the same as the Quince Queen Bed, its statement that West Elm's unidentified same bed is ***$1,999*** is

false and misleading. For example, West Elm's queen-sized "Haven Slipcover Bed" is also

upholstered in a performance velvet and has a similarly sized 45.5" headboard, and costs ***$1,499***:



Quince Queen Bed on left (48" headboard; performance velvet)
West Elm queen bed on right for $1,499 (45.5" headboard; performance velvet)

*Id.*; *Haven Slipcover Bed*, West Elm, https://www.westelm.com/products/haven-slipcover-bed-h7769/ (last visited 10/13/2025).

39.     As a further example of Quince's false advertising through its website, Quince advertises a 5'x8' "Sloane Indoor/Outdoor Rug" that is purportedly made from recycled water bottles and has a 0.4" pile height (the "Quince Indoor/Outdoor Rug"). *Sloane Indoor/Outdoor Rug,* Quince, https://www.quince.com/home/sloane-rug (last visited 10/13/2025). Quince claims Pottery Barn charges $619 for the same product:



*Id.*

40.     Quince's statements are false and misleading because Pottery Barn does not sell the Quince Indoor/Outdoor Rug. A consumer who purchases the Quince Indoor/Outdoor Rug, thus, does not receive a "58% Savings" by purchasing it from Quince instead of Pottery Barn. *Id.*

41.    Additionally or alternatively, Quince's statements are false and misleading because Quince never identifies the purportedly competing Pottery Barn rug, nor does it even attempt to substantiate its claim that any Pottery Barn rug is the same, despite being required to do before making the false comparison.

42.    In fact, Quince's statements are false and misleading because Pottery Barn does not sell a product that is the same as the Quince Indoor/Outdoor Rug. A reasonable opportunity for further investigation or discovery is likely to show that Pottery Barn's goods—including its rugs—are higher quality than Quince's. A consumer who purchases the Quince Indoor/Outdoor Rug, thus, does not receive a "58% Savings." *Id.* Rather, the consumer spends less for an inferior product.

43.    Further, even if Quince could somehow substantiate that a specific Pottery Barn rug were the same, its statement that Pottery Barn's unidentified same rug is ***$619*** is false and misleading. For example, Pottery Barn's 5'x8' "Kian Outdoor Performance Rug" costs ***$399***, is made from recycled water bottles, and has a 0.5" pile height:



Quince Rug on left (5'x8'; made from recycled water bottles; 0.4" pile height)
Pottery Barn rug on right for $399 (5'x8'; made from recycled water bottles; 0.5" pile height)

*Id.*; *Kian Outdoor Performance Rug*, Pottery Barn, https://www.potterybarn.com/products/kian-indoor-outdoor-rug-khaki/ (last visited 10/13/2025).

44.    As a further example of Quince's false advertising through its website, Quince advertises a 5'x8' "Oakley Handwoven Jute Rug" that is purportedly woven with 100% jute, has a

0.75" pile height, and has no backing (the "Quince Jute Rug"). *Oakley Handwoven Jute Rug,* Quince, https://www.quince.com/home/oakley-jute-rug (last visited 10/13/2025). Quince claims Pottery Barn charges $599 for the same product:




*Id.*

45.     Quince's statements are false and misleading because Pottery Barn does not sell the Quince Jute Rug. A consumer who purchases the Quince Jute Rug, thus, does not receive a "50% Savings" by purchasing it from Quince instead of Pottery Barn. *Id.*

46.     Additionally or alternatively, Quince's statements are false and misleading because Quince never identifies the purportedly competing Pottery Barn rug, nor does it even attempt to substantiate its claim that any Pottery Barn rug is the same, despite being required to do before making the false comparison.

47.     In fact, Quince's statements are false and misleading because Pottery Barn does not sell a product that is the same as the Quince Jute Rug. A reasonable opportunity for further investigation or discovery is likely to show that Pottery Barn's goods—including its rugs—are higher quality than Quince's. A consumer who purchases the Quince Indoor/Outdoor Rug, thus, does not receive a "50% Savings." *Id.* Rather, the consumer spends less for an inferior product.

48.     Further, even if Quince could somehow substantiate that a specific Pottery Barn rug were the same, its statement that Pottery Barn's unidentified same rug is **$599** is false and misleading. For example, Pottery Barn's 5'x8' "Haven Jute Braided Rug" is woven with 100% jute, has a 0.5" pile height and a backing made from 100% recycled cotton, and costs **$399**:



Quince Jute Rug on left (5'x8'; 100% jute; 0.75" pile height; no backing)
Pottery Barn rug on right for $399 (5'x8'; 100% jute; 0.5" pile height; recycled cotton backing)

*Id.*; *Haven Jute Braided Rug*, Pottery Barn, https://www.potterybarn.com/products/haven-braided-natural-fiber-rug-ivory/ (last visited 10/13/2025).

49.     As a further example of Quince's false advertising through its website, Quince advertises a "Single Globe Steel Sconce" that purportedly has a 5.25" shade (the "Quince Sconce").

*Single Globe Steel Sconce,* Quince, https://www.quince.com/home/single-globe-steel-sconce (last visited 10/13/2025). Quince claims West Elm charges $109 for the same product:



*Id.*

50.     Quince's statements are false and misleading because West Elm does not sell the Quince Sconce. A consumer who purchases the Quince Sconce, thus, does not receive a "31% Savings" by purchasing it from Quince instead of West Elm. *Id.*

51.     Additionally or alternatively, Quince's statements are false and misleading because Quince never identifies the purportedly competing West Elm sconce, nor does it even attempt to substantiate its claim that any West Elm sconce is the same, despite being required to do before making the false comparison.

52.     In fact, Quince's statements are false and misleading because West Elm does not sell a product that is the same as the Quince Sconce. A reasonable opportunity for further investigation or discovery is likely to show that West Elm's goods—including its lighting products—are higher quality than Quince's. A consumer who purchases the Quince Sconce, thus, does not receive a "31% Savings." *Id.* Rather, the consumer spends less for an inferior product.

53.     Further, even if Quince could somehow substantiate that a specific West Elm sconce was the same, its statement that West Elm's unidentified similar sconce is *$109* is false and misleading. For example, West Elm's "Sculptural Globe Sconce" with a 6.5" shade costs *$99*:



Quince Sconce on left (5.25'' shade)
West Elm sconce on right for $99 (6.5'' shade)

*Id.*; *Sculptural Globe Sconce*, West Elm, https://www.westelm.com/products/sculptural-glass-globe-sconce-small-ombre-w3357/ (last visited 10/13/2025).

1

## II.    Quince's False Advertising on Other Platforms

2      54.      Through video and photographic advertisements shown on various platforms (*e.g.*,

3   Instagram, TikTok, Pinterest, and YouTube), Quince has repeatedly made (and continues to make)

4   false and misleading comparisons to WSI products.

5      55.      For example, Quince advertises its "Performance Velvet Wingback Bed" (the "Quince

6   Wingback Bed") on platforms including Instagram with a video advertisement wherein overlaid text

7   states, "POTTERY BARN QUALITY FOR *half the* PRICE":

8

9

10

11

12

13      

14

15

16

17

18

19

20   *Quince Advertisement – Performance Velvet Wingback Bed*, https://orrick.app.box.
     com/s/sjrvx2tayxql4z4wkzsj6br91evdukxn.

21

22      56.      For reference, a Quince Wingback Bed that is purportedly upholstered in a performance

23   velvet and has 48" headboard costs $1,350 for a full, $1,400 for a queen, and $1,500 for a king.

24   *Performance Velvet Wingback Bed*, Quince, https://www.quince.com/home/performance-velvet-

25   wingback-bed-high (last visited 10/14/2025). A Quince Wingback Bed that is upholstered in a

26   performance velvet and has a 40" headboard costs $1,300 for a full, $1,350 for a queen, and $1,450

27   for a king. *Id.*

28      57.      Quince's statements in this advertisement are false and misleading.

58.     For example, Quince's statement that the Quince Wingback Bed is "POTTERY BARN QUALITY" is false and misleading. *Id.* A reasonable opportunity for further investigation or discovery is likely to show that Pottery Barn's goods—including its bedding products—are higher quality than Quince's. A consumer who purchases the Quince Wingback Bed, thus, does not receive a product that is "*half the* PRICE" of Pottery Barn. *Id.* Rather, the consumer spends less for an inferior product.

59.     Additionally, Quince's statement that the Quince Wingback Bed is "POTTERY BARN QUALITY FOR *half the* PRICE" is false and misleading because Quince never identifies the purportedly competing Pottery Barn bed, nor does it even attempt to substantiate its claim that any Pottery Barn bed is the same as the Quince Wingback Bed, despite being required to do before making the false comparison. As a result, for example, consumers are misled into believing all Pottery Barn beds cost twice as much as the Quince Wingback Bed.

60.     Further, even if Quince could somehow substantiate that a specific Pottery Barn bed were the same, its statement that the Quince Wingback Bed is "POTTERY BARN QUALITY FOR *half the* PRICE" is further false and misleading. For example, Pottery Barn's "Elliot Shelter Upholstered Bed" that has a 46.5'' headboard and is upholstered in a performance velvet costs $999 for a full, $999 for a queen, and $1,199 for a king. In other words, the Quince Wingback Bed is not "half the PRICE" of Pottery Barn; it costs *more* than Pottery Barn:



Quince Wingback Bed on left for $1,300 (full; performance velvet; 40" headboard)
Pottery Barn bed on right for $999 (full; performance velvet; 46.5" headboard)

*Performance Velvet Wingback Bed*, Quince, https://www.quince.com/home/performance-velvet-wingback-bed-high (last visited 10/14/2025); *Elliot Shelter Upholstered Bed*, Pottery Barn, https://www.potterybarn.com/products/elliot-tall-upholstered-bed (last visited 10/14/2025).

61.    As a further example of Quince's false and misleading video and photographic advertisements, Quince advertises its "Airy Cotton Gauze Duvet Cover" (the "Quince Duvet Cover") on platforms including Instagram with a video advertisement wherein a woman states:

> I was swapping out my bedding for fall and was looking for something breathable, soft, and elevated. But I couldn't justify spending $300 on bedding at Pottery Barn. That's when I found the Airy Cotton Gauze Duvet from Quince. … Plus, it's 50% less than other brands for the same product.

*Quince Advertisement – Airy Gauze Duvet Cover*, https://orrick.box.com/s/kokb5yh 11ylnjapbnzrr6ih1v6oo17u5.

62.    Further, text on the video advertisement states, "I couldn't justify spending $300 at Pottery Barn" and "50% LESS than Pottery Barn":



*Id.*

63.    For reference, a full/queen-sized Quince Duvet Cover costs $129.90 and is purportedly made of 100% organic cotton. *Organic Airy Gauze Duvet Cover*, Quince, https://www.quince.com/home/airy-cotton-gauze-duvet-cover (last visited 10/13/2025).

1    64.    Quince's statements in this advertisement are false and misleading.

2    65.    For example, Quince's statement that Pottery Barn sells the "same product" is false and

3    misleading because Pottery Barn does not sell the Quince Duvet Cover. For the same reason, the

4    Quince Duvet Cover is not "50% LESS" at Quince than at Pottery Barn. *Id.*

5    66.    Additionally or alternatively, Quince's statement that the Quince Duvet Cover is "50%

6    LESS than Pottery Barn" is false and misleading because Pottery Barn does not sell a product that is

7    the same as the Quince Duvet Cover. A reasonable opportunity for further investigation or discovery

8    is likely to show that Pottery Barn's goods—including its bedding products—are higher quality than

9    Quince's. A consumer who purchases the Quince Duvet Cover, thus, does not spend "50% LESS"

10    than at Pottery Barn. *Id.* Rather, the consumer spends less for an inferior product.

11    67.    Additionally or alternatively, Quince's statement that the Quince Duvet Cover is "50%

12    LESS than Pottery Barn" is false and misleading because Quince never identifies the size of the Quince

13    Duvet Cover being referenced (*e.g.*, twin, full, queen, or king) or the purportedly competing Pottery

14    Barn duvet cover that forms the basis of this statement, nor does it even attempt to substantiate its

15    claim that any Pottery Barn duvet cover is the same, despite being required to do before making the

16    false comparison.

17    68.    Further, even if Quince could somehow substantiate that a specific Pottery Barn duvet

18    cover were the same, its statements that (1) Pottery Barn's unidentified similar duvet cover costs twice

19    as much as the Quince Duvet Cover and (2) the consumer "could not justify spending $300 at Pottery

20    Barn" are false and misleading. For example, Pottery Barn sells a full/queen-sized "Cloud Duvet

21

22

23

24

25

26

27

28

Cover" made of 100% cotton for $229—thus, the Quince Duvet Cover is not "50% LESS than Pottery Barn," and the Pottery Barn duvet cover does not cost $300:



Quince Duvet Cover on left for $129.90 (full/queen; 100% cotton)
Pottery Barn duvet cover on right for $229.00 (full/queen; 100% cotton)

*Organic Airy Gauze Duvet Cover*, Quince, https://www.quince.com/home/airy-cotton-gauze-duvet-cover (last visited 10/13/2025); *Cloud Duvet Cover*, Pottery Barn, https://www.potterybarn.com/products/cloud-linen-duvet-cover-white/ (last visited 10/13/2025).

69.    As a further example of Quince's false and misleading video and photographic advertisements, Quince advertises its "Airy Cotton Gauze Duvet Cover Set" (the "Quince Duvet Cover Set") on platforms including Instagram with a video advertisement wherein text on the screen states:

"[l]ike West Elm but *$100 less*"; "See why this duvet cover set has 1,000+ 5-star reviews"; and "1/2 the price of other brands":



*Quince Advertisement – Airy Gauze Duvet Cover Set*, https://orrick.box.com/s/yrna knx7nfvlmy3qkudbgjt5znp8rhhd.

70.    For reference, the twin-sized Quince Duvet Cover Set costs $109.90, includes a duvet cover and one standard sham, and is purportedly made from 100% organic cotton. *Organic Airy Gauze Duvet Cover Set*, Quince, https://www.quince.com/home/airy-cotton-gauze-duvet-cover-set (last visited 10/13/2025).

71.    Quince's statements in this advertisement are false and misleading.

72.    For example, Quince's statement that the Quince Duvet Cover Set is "[l]ike West Elm but *$100 less*" is false and misleading. West Elm does not sell the Quince Duvet Cover Set. West Elm also does not sell a product that is "like" the Quince Duvet Cover Set. A reasonable opportunity for further investigation or discovery is likely to show that West Elm's goods—including its bedding products—are higher quality than Quince's. A consumer who purchases the Quince Duvet Cover Set, thus, does not spend "*$100 less*" than at West Elm. *Id.* Rather, the consumer spends less for a different, inferior product. *See, e.g.*, *id.* (Quince customer review on 7/3/2025: "Material was not as described, very cheap."); *id.* (Quince customer review on 6/27/2025: "I bought 2 duvet sets in 2 different colors, and both have started to fall apart within a few months."); *id.* (Quince customer review on 6/23/2025:

"The material is incredibly cheap and snagged and pilled all over, within just a few days of use."); *id.* (Quince customer review on 4/28/2025: "While they look nice the gauze is scratchy and very thin."); *id.* (Quince customer review on 3/28/2025: "I have had this duvet cover for maybe a month and a half to two months[.] … The item is pilling after the second wash. I washed it as instructed. I would expect better quality materials and durability given the price paid for the item.").

73.     Additionally, Quince's statement that the Quince Duvet Cover Set is "[l]ike West Elm but *$100 less*" is also false and misleading because Quince never identifies the purportedly competing West Elm duvet cover set, nor does it even attempt to substantiate its claim that any West Elm duvet cover set is the same as the Quince Duvet Cover Set, despite being required to do so before making the false comparison. As a result, for example, consumers are misled into believing all West Elm duvet cover sets cost $100 more than the Quince Duvet Cover Set.

74.     Further, even if Quince could somehow substantiate that a specific West Elm duvet cover set were the same, its statement that the Quince Duvet Cover Set is "*$100 less*" than West Elm's duvet cover is false and misleading. For example, West Elm's twin-sized "Reese Linen Cotton Duvet Cover & Shams" includes a duvet cover and one standard sham, is made from 85% cotton and 15% linen, and costs $163—thus, the Quince Duvet Cover Set is not "*$100 less*":



Quince Duvet Cover Set on left for $109.90 (twin; duvet cover + one sham; 100% cotton)
West Elm duvet cover set on right for $163.00 (twin; duvet cover + one sham; 85% cotton, 15% linen)

*Id.*; *Reese Linen Cotton Duvet Cover & Shams*, West Elm, https://www.westelm.com/products/reese-linen-cotton-duvet-cover-shams-t7062/ (last visited 10/13/2025).

1      75.    Additionally, Quince's statement in advertisements from September and October of

2  2025 that the Quince Duvet Cover Set has "1,000+ 5-star reviews" is false and misleading. For

3  example, as of September 12, 2025, the Quince Duvet Cover Set had approximately 885 five-star

4  reviews, and, as of October 1, 2025, it had approximately 918 five-star reviews. *See Organic Airy*

5  *Gauze Duvet Cover Set*, Quince, https://www.quince.com/home/airy-cotton-gauze-duvet-cover-set

6  (last visited 10/13/2025). Not only does the number of 5-star reviews not exceed 1,000, the claim is

7  not representative of the typical customer experience. A reasonable opportunity for further

8  investigation or discovery is likely to show that this 5-star review claim is false and misleading because

9  Quince offers incentives to its customers to write reviews but does not disclose any incentive for any

10  review.

11      76.    As another example of Quince's false and misleading video and photographic

12  advertisements, Quince advertises its "European Linen Duvet Cover" (the "Quince European Linen

13  Duvet Cover") on platforms including Instagram with a video advertisement wherein a woman states:

> I was looking for breathable sheets for summer, but everything at Brooklinen and
> Pottery Barn was over $280. This is the European Linen Duvet Cover from Quince ….
>
> *Quince Ad re European Linen Duvet Cover*, https://orrick.box.com/s/2b5wy91ga66
> scwapts04rejbl673axrj.

77.    Further, overlaid text on the video advertisement states, "I can't justify spending $300 on bedding from Brooklinen or Pottery Barn":



*Id.*

78.    Quince's statements in this advertisement are false and misleading.

79.    For example, Quince's statement in the voice-over of the video that "I was looking for breathable sheets for summer, but everything at [] Pottery Barn was over $280" is false and misleading because it falsely states that everything sold by Pottery Barn (or at least every sheet) costs over $280. To the contrary, for example, Pottery Barn's "Belgian Flax Linen Duvet Cover" costs $219 for a twin and $279 for a full/queen. *Belgian Flax Linen Duvet Cover*, Pottery Barn, https://www.potterybarn. com/products/belgian-flax-linen-duvet-cover-white (last visited 10/13/2025).

80.    Additionally, Quince's statement that "I just can't justify spending $300 on bedding from … Pottery Barn" is false and misleading because it falsely implies that all bedding sold by Pottery Barn costs $300 or more. *See, e.g.*, *id.*

**III.    Quince's False Claims Regarding its Products' Materials and Certifications**

81.    A reasonable opportunity for further investigation or discovery is likely to show that Quince falsely and misleadingly states its products' materials and certifications, including for products that purportedly compete with WSI.

82.    For example, the New York Times' product and review site, Wirecutter, determined Quince falsely represented that its Organic Turkish Waffle Towel was made of Global Organic Textile Standard ("GOTS")-certified cotton. Ex. B. When asked for comment, Quince claimed its false statement was an "error." *Id.* Quince then "discontinued" this line of waffle towels so it could "replace them with waffle towels with increased fabric weight and absorption." *Id.*

83.    As another example, Wirecutter reviewed Quince's Classic Organic Percale Sheet Set, which included a GOTS certification tag sewn into the label. *Id.* When Wirecutter asked Quince for the GOTS certification number, Quince provided an invalid one. *Id.*

84.    As a further example, regarding Quince's Classic Organic Percale Sheet Set, the New York Times explained Quince made the "head-scratching fabric claim … that the sheets [were] made from 100% organic long-staple cotton" even though "that approach would involve a farming practice that's extremely expensive." *Id.* "Organic cotton is usually lower quality[.] … You can have organic … or you can have long-staple GMO cotton, but you can't have both." *Id.* (quoting Alden Wicker, a "sustainable-fashion expert").

85.    As an additional example, a reasonable opportunity for further investigation or discovery is likely to show that Quince falsely and misleadingly advertises on its website that its Duvet Cover and/or Duvet Cover Set is made from 100% organic, long-staple cotton:

 

*Organic Airy Gauze Duvet Cover*, Quince, https://www.quince.com/home/airy-cotton-gauze-duvet-cover (last visited 10/13/2025) and *Organic Airy Gauze Duvet Cover Set*, Quince, https://www.quince.com/home/airy-cotton-gauze-duvet-cover-set (last visited 10/13/2025).

IV.    **Quince's False Advertising Regarding its Product Reviews**

86.    On its website, through graphics showing "Reviews" for a given product, Quince has repeatedly made (and continues to make) false and misleading statements regarding products that purport to compete with WSI.

87.    For example, Quince prominently states at the top of the product page that the Quince Duvet Cover has received 447 five-star reviews, or put another way, every review has been a five-star rating:



*Organic Airy Gauze Duvet Cover*, Quince, https://www.quince.com/home/airy-cotton-gauze-duvet-cover (last visited 10/13/2025).

88.    This statement is false and misleading because not every review for the Quince Duvet Cover has been a 5-star rating, as Quince itself admits much lower on the page, where a consumer is less likely to see the details, and only after scrolling below pictures of different products in the "More to explore" section, at the bottom of the page:



*Id.*

89.    More specifically, as of October 2, 2025, this product had five 1-star reviews, 12 2-star reviews, 24 3-star reviews, and 47 4-star reviews. *See id.* Further, when the consumer clicks on the reviews, the first reviews to be displayed are 5-star reviews, which are not representative of the overall customer experience. *Id.*

90.     A reasonable opportunity for further investigation or discovery is likely to reveal other examples of false 5-star reviews for Quince products published on the Quince website.

91.     Further, Quince's product reviews are false and misleading because Quince fails to disclose that its reviews are incentivized. For example, when a consumer purchases a product from Quince, Quince offers the consumer reward points if they submit a review and additional reward points if they submit a photo along with the review, but fails to disclose these incentives in connection with the reviews. Whether a review is incentivized would have an impact on a reasonable consumer's understanding of the meaning of the review.

92.     Additionally, through its advertisements, Quince has made and continues to make false and misleading statements regarding its product reviews.

93.     For example, Quince advertises its "Ceramic Nonstick 7 pc Cookware Set" (the "Quince Cookware Set") on social media platforms and represents that "200,000 5-star reviews can't be wrong":



94.     This statement is false and misleading, because the Quince Cookware Set does not have 200,000 5-star reviews. To the contrary, as Quince concedes on its website, the set only has 37 total reviews, and several are not 5-star reviews:



*Ceramic Nonstick 7pc Cookware Set*, Quince, https://www.quince.com/home/ceramic-nonstick-7pc-cookware-set (last visited 11/20/2025).

## **FIRST CAUSE OF ACTION**

### **False Advertising in Violation of 15 U.S.C. § 1125(a)(1)(B)**

95.     WSI incorporates by reference all the foregoing paragraphs as if fully set forth herein.

96.     Quince's conduct constitutes false and misleading advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

97.     As described above, Quince advertised falsely by making false and misleading statements, including as to price and quality of relevant products, that were material and tended to deceive consumers, injuring WSI in the market. By doing so, Quince diverted WSI's customers and diminished WSI's goodwill.

98.     Quince knew its advertising was false or misleading, or it acted with reckless disregard for, or willful blindness to, the false or misleading nature of its advertising. For example, when WSI discovered Quince's false comparisons, WSI notified Quince, hoping and believing Quince would correct the errors and compete fairly in the marketplace. Instead, Quince doubled down.

99.     Quince continues to perpetrate its false and misleading advertising.

100.     Unless enjoined by this Court, Quince will continue to mislead consumers and irreparably injure WSI, its goodwill, and its market share. WSI, thus, is entitled to preliminary and

permanent injunctive relief to prevent Quince from continuing its false and misleading advertising. *See* 15 U.S.C. § 1116.

101.   WSI is also entitled to its actual damages, Quince's profits, enhanced damages and profits, costs, and pre- and post-judgment interest. *See* 15 U.S.C. § 1117(a). Further, WSI is entitled to recover reasonable attorneys' fees because of Quince's conduct, which is exceptional for purposes of the Lanham Act. *See id.*

## SECOND CAUSE OF ACTION

### False Advertising in Violation of Cal. Bus. & Prof. Code § 17500, *et seq.*

102.   WSI incorporates by reference all the foregoing paragraphs as if fully set forth herein.

103.   Quince's conduct constitutes false and misleading advertising in violation of Cal. Bus. & Prof. Code § 17500, *et seq.* (the "California FAL"). For example, Quince advertised falsely by making false and misleading statements that were material and tended to deceive consumers, injuring WSI in the market.

104.   Quince knew its advertising was false and misleading, or it acted with reckless disregard for, or willful blindness to, the false or misleading nature of its advertising. For example, when WSI discovered Quince's false comparisons, WSI notified Quince, hoping and believing Quince would correct the errors and compete fairly in the marketplace. Instead, Quince doubled down.

105.   Unless enjoined by this Court, Quince will continue to mislead consumers and irreparably injure WSI, its goodwill, and its market share. WSI, thus, is entitled to preliminary and permanent injunctive relief.

106.   Defendant should be required to restore to WSI any and all profits earned as a result of its false and misleading advertising or provide WSI with any other restitutionary relief the Court deems appropriate.

## THIRD CAUSE OF ACTION

### Unfair Competition in Violation Cal. Bus. & Prof. Code § 17200, *et seq.*

107.   WSI incorporates by reference all the foregoing paragraphs as if fully set forth herein.

108.   Quince's conduct constitutes unfair competition in violation of Cal. Bus. & Prof. Code § 17200, *et seq.* (the "California UCL").

109.    Quince's conduct constitutes an unlawful business practice, because, as described, Quince's conduct violates 15 U.S.C. § 1125(a)(1)(B) and the California FAL.

110.    Additionally, Quince's conduct constitutes a fraudulent business act or practice. As described in the examples above, Quince advertised falsely by making false and misleading statements that were material and tended to deceive consumers, injuring WSI in the market. To reiterate just one example, Quince has and continues to falsely and misleadingly advertise the Quince Sectional by: (1) asserting Pottery Barn charges customers more for the Quince Sectional; (2) asserting the Quince Sectional is the same as one or more unidentified Pottery Barn sectionals; and/or (3) misrepresenting the cost of Pottery Barn's sectionals to make Quince's prices appear to be more favorable. *See Stillman Performance Basketweave Chaise Sectional*, Quince, https://www.quince.com/home/performance-basketweave-track-arm-chaise-sectional?color=ivory (last visited 10/13/2025).

111.    Further, Quince's conduct constitutes an unfair business act or practice. For example, Quince's willfully false and misleading advertising, as described above, including its false statements of WSI's prices, violates the policy and spirit of antitrust laws and significantly threatens or harms competition.

112.    Unless enjoined by this Court, Quince will continue to mislead consumers and irreparably injure WSI, its goodwill, and its market share. WSI, thus, is entitled to preliminary and permanent injunctive relief.

113.    Quince should be required to restore to WSI any and all profits earned as a result of Quince's false and misleading advertising or provide WSI with any other restitutionary relief the Court deems appropriate.

### FOURTH CAUSE OF ACTION

### Restitution Based on Quasi-Contract

114.    WSI incorporates by reference all the foregoing paragraphs as if fully set forth herein.

115.    Quince has unjustly received and retained a benefit at WSI's expense, as described above.

116.    For example, at WSI's expense, Quince unjustly received and retained WSI's profits, customers, and goodwill.

1    117.    Quince should be required to restore to WSI any and all profits earned as a result of

2    Quince's false and misleading advertising or provide WSI with any other restitutionary relief the Court

3    deems appropriate.

4                                    **PRAYER FOR RELIEF**

5            Wherefor, WSI requests the following relief:

6            a)    Judgment that Quince advertised falsely in violation of 15 U.S.C. § 1125(a)(1)(B);

7            b)    Judgment that Quince advertised falsely in violation of the California FAL;

8            c)    Judgment that Quince competed unfairly in violation of the California UCL;

9            d)    Preliminary and permanent injunctive relief to prevent Quince from continuing its false

10    and misleading advertising;

11           e)    An award to WSI of Quince's profits received from its misconduct;

12           f)    An award of WSI's actual damages in the amount proven at trial;

13           g)    An exceptional case finding pursuant to 15 U.S.C. § 1117(a);

14           h)    Enhanced damages up to three times the amount of actual damages pursuant to 15

15    U.S.C. § 1117(a);

16           i)    An order of restitution returning to WSI any amount of money or other things of value

17    taken by Quince through its misconduct;

18           j)    WSI's reasonable attorneys' fees;

19           k)    Pre- and post-judgment interest;

20           l)    WSI's costs; and

21           m)    Such other and further relief as the Court deems just and proper.

22

23

24

25

26

27

28

1

## **JURY TRIAL DEMAND**

2

WSI demands a jury trial on all issues so triable.

3

4
                                    Respectfully submitted,

5
Dated: November 21, 2025        */s/ Nathan Shaffer*

                                      Nathan Shaffer (CA SBN 282015)
6
                                      nshaffer@orrick.com
7
                                      ORRICK, HERRINGTON & SUTCLIFFE LLP
                                      405 Howard St
8
                                      San Francisco, CA 94105
                                      T: +1 415 773 5440

9
                                      Angela Colt (CA SBN 286275)
10
                                      acolt@orrick.com
                                      ORRICK, HERRINGTON & SUTCLIFFE LLP
11
                                      51 W 52nd St
                                      New York, NY 10019
12
                                      T: +1 212 506 5000

13
                                      Jake O'Neal (CA SBN 332827)
                                      jake.oneal@orrick.com
14
                                      ORRICK, HERRINGTON & SUTCLIFFE LLP
                                      355 S Grand Ave, Ste 2700
15
                                      Los Angeles, CA 90071
16
                                      T: +1 213 629 2020

17
                                      ***Attorneys for Plaintiff***
                                      Williams-Sonoma, Inc.

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT