United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

WILLIAMS-SONOMA, INC.,

Plaintiff,

v.

LAST BRAND, INC.,

Defendant.

Case No. 5:25-cv-10118-EJD

**ORDER GRANTING MOTION TO DISMISS**

Re: ECF No. 21

Before the Court is Defendant Last Brand, Incorporated's d/b/a Quince ("Quince") Motion to Dismiss ("the Motion") Plaintiff Williams-Sonoma, Incorporated's ("WSI") Complaint. WSI's Complaint raises four claims: (1) false advertising in violation of the Lanham Act (15 USC § 1125(a)(1)(B)); (2) false advertising in violation of California's false advertising law ("FAL") (Cal. Bus. & Prof. Code § 17500); (3) unfair competition in violation of California's unfair competition law ("UCL") (Cal. Bus. Prof. Code § 17200); and (4) restitution based on quasi-contract. Compl., ECF No. 1. Quince moved to dismiss the entire Complaint with prejudice pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6). Mot. to Dismiss ("Mot."), ECF No. 21. WSI filed an Opposition, and Quince filed a Reply. Opp., ECF No. 22; Reply, ECF No. 25. This Court heard argument on the Motion on February 19, 2026, and took the matter under submission.

For the reasons explained below, the Court GRANTS the motion to dismiss all claims against Quince under Rules 9(b) and 12(b)(6) without prejudice.

# I. BACKGROUND

## A. Parties

Plaintiff WSI is a retailer of kitchen and home goods. From its original brick-and-mortar storefront, the WSI brand has expanded over the decades to now encompass a large family of brands, including but not limited to Pottery Barn, West Elm, and Rejuvenation (collectively, "WSI" or the "WSI brand").[1]

Defendant Quince is an online direct-to-consumer retailer of clothing, accessories, kitchen and home goods, and various other products. Quince advertises that it sells products comparable to those of traditional retailers like WSI, but at significantly lower prices. To accomplish this, Quince represents that it partners directly with factories to cut out the middlemen, design and produce Quince's products, and ship the products straight to their customers—thereby passing on the savings to their consumers.

## B. Factual Background

WSI brings this lawsuit against Quince alleging that Quince falsely advertises its own products as similar to or the same as—but less expensive than—WSI brand's products. WSI alleges that the "cost savings" achieved by Quince are actually the result of cutting corners and compromising the quality of their products. WSI further alleges that Quince has engaged in a widespread false advertising campaign by comparing its products to WSI's and seeking to capitalize on the goodwill of WSI's brands.

WSI primarily takes issue with four components of Quince's advertising: (1) the "Beyond Compare" charts on Quince's website; (2) Quince's comparative social media ads; (3) Quince's materials and certifications; and (4) Quince's product reviews.

[1] The WSI brand includes Pottery Barn, Pottery Barn Kids, Pottery Barn Teen, West Elm, Williams Sonoma Home, Rejuvenation, Mark and Graham, and GreenRow. Compl. ¶ 1.

***"Beyond Compare" Charts.*** On its website, Quince provides a "Beyond Compare" chart on many of its product webpages. Compl. ¶¶ 8–14. These charts list Quince's product alongside the products of other companies, including but not limited to the WSI brands, and provide a side-by-side comparison of each product's price, delivery cost, provision of warranty, and other considerations. *Id.* A full screenshot of the Beyond Compare chart for Quince's Stillman Track Arm Chaise Sectional is provided below:




Weil Decl. to Mot., Ex. G at 4–5, ECF No. 21-8.

When a customer hovers over the information icon beside the Beyond Compare chart heading, the icon discloses when Quince retrieved the pricing information for its competitor's products and disclaims that "[p]ricing is subject to change." Mot. 16. The rest of each product's

United States District Court
Northern District of California

webpage mentions Quince's other products and collections, such as marketing its products as part of "our [] collection," upholstered in "our [] performance velvet," made to order by "our team of skilled artisans." Mot. 12.

WSI alleges that these charts are literally false because they state that Quince sells the same products as WSI, but for less. *E.g.,* Compl. ¶¶ 30–33. In the alternative, WSI alleges that these charts are false and misleading because Quince neither identifies the WSI product in its comparison to, nor attempts to substantiate its claim that any WSI brand product is the same. *Id.* Finally, WSI alleges that even if Quince was able to identify a specific WSI product that was the same as or similar to Quince's product, Quince misrepresents the prices of WSI's products in the charts to magnify a customer's perceived savings when buying a Quince product instead. *Id.*

***Social Media Ads.*** Quince also runs video and photographic ads that appear on various social media platforms such as Instagram, TikTok, and YouTube. Compl. ¶ 15. Some of these ads compare Quince's products to those of other companies, expressly mentioning those companies by name. *Id.* ¶ 16. For example, one ad states Quince's cookware is "Like Williams Sonoma, but half the price." *Id.* In another ad for Quince's duvet cover set, the woman in the ad states that she "couldn't justify spending $300 on bedding at Pottery Barn," and that she purchased a duvet cover from Quince because "it's 50% less than other brands for the same product." *Id.* ¶ 61.

WSI alleges that these statements "falsely suggest[] consumers can purchase the same items [from Quince] at dramatically reduced prices." *Id.* ¶ 16.

***Products' Certifications or Material Descriptions.*** WSI alleges Quince falsely represented that certain products were made of Global Organic Textile Standard-certified ("GOTS-certified") cotton or organic long-staple cotton. *Id.* ¶¶ 81–85. In support, WSI cites an article by the New York Times's product and review site, Wirecutter, reviewing several of Quince's products. *Id.*, Ex. B, ECF No. 1-2 (the "Article").

The Article initially questions the GOTS-certification of Quince's towels, and then explains that, when reached for comment, Quince confirmed that the certification of the towels

United States District Court
Northern District of California

was actually under review and that it would be removed from its website. *Id*. The Article also questions the GOTS-certification of Quince's bedsheet sets, as indicated in a sewn-in tag on the sheets, but then later verifies this certification. *Id.* Finally, the Article expresses skepticism at statements on Quince's website that its bedsheet sets were made of "organic long-staple cotton" based on a sustainable-fashion expert's opinion that it is impossible to have cotton that is both organic and long-staple. *Id.*

***Product Reviews.*** WSI also accuses Quince of misrepresenting its product reviews. First, WSI alleges that an ad stating "[Quince's] Duvet Cover Set Has 1,000+ 5-Star Reviews" is literally false, and that another ad that states "200,000 5-star reviews can't be wrong" is both false and misleading. *Id.* ¶¶ 69, 93.

Second, WSI alleges that how Quince displays the average number of stars received by a product, rounded up, is misleading. Specifically, WSI points to Quince's representation of "★★★★★ (447 REVIEWS)" at the top of its duvet cover set product page to argue that this falsely implies the product received 447 five-star reviews when, in actuality, the product has an average rating of 4.7. *Id.* ¶ 87.

Finally, Quince incentivizes customers to submit reviews through a point system. Mot. 21. For example, customers can earn 500 points for creating an account, 2,000 points for referring a friend, and 75 points for leaving a product review (for a maximum of ten reviews). *Id.*, n.6. The customer can then redeem 1,000 points for $10 off. *Id.* WSI alleges that Quince's reviews are false and misleading "because Quince fails to disclose that its reviews are incentivized." Compl. ¶ 91.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted. When deciding whether to grant a motion to dismiss, the court must accept all "well-pleaded factual

allegations" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). While a plaintiff need not offer detailed factual allegations to meet this standard, she is required to offer "sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" *Id*. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must also construe the alleged facts in the light most favorable to the plaintiff. *See Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am*., 768 F.3d 938, 945 (9th Cir. 2014). The court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

If the court concludes that a 12(b)(6) motion should be granted, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

### B. Rule 9(b)

Pursuant to Federal Rule of Civil Procedure 9(b), a plaintiff alleging fraud must also "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this standard, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). In other words, a plaintiff must allege "the who, what, when, where, and how," of the alleged misconduct. *Id.*

## III. DISCUSSION

In its Complaint, WSI alleges that Quince's advertising is both literally false and misleading to reasonable consumers. Quince argues that WSI's false advertising claims under the Lanham Act, California FAL, and California UCL should be dismissed for failure to sufficiently plead several elements of those claims.

The Court will address each of Quince's arguments in turn. First, the Court considers whether Rule 9(b) applies to WSI's false advertising claims. Second, as to WSI's Lanham Act and California FAL claims, the Court evaluates Quince's arguments that WSI did not and cannot plausibly allege false advertising. Specifically, the Court addresses WSI's allegations as to (1) falsity of Quince's product certifications or materials; (2) falsity of statements made in Quince's

Beyond Compare charts and social media ads that Quince's products are the "same" as WSI's; (3) the alleged inferiority of Quince's products, which forms the basis of WSI's allegations that Quince's comparative advertising is both false and misleading; (4) misrepresentation of WSI's prices; (5) WSI's lack-of-substantiation claims; and (6) falsity involving Quince's product reviews. Third, the Court considers whether the dispute should be limited to the examples WSI cited in its Complaint. Finally, the Court addresses Quince's arguments that, even if WSI's Lanham Act and California FAL claims survive, WSI's state law claims fail as a matter of law and should be dismissed for independent reasons.

**A. Applicability of Rule 9(b)**

The parties disagree as to whether Rule 9(b)'s heightened pleading standard applies to WSI's false advertising claims. Quince argues that Rule 9(b) applies because all WSI's claims sound in fraud as they accuse Quince of intentionally deceiving customers. WSI does not dispute this as to most of its claims but contends that Rule 9(b) does not categorically apply to its false advertising claim under the Lanham Act. *See Oracle Am., Inc. v. TERiX Computer Co., Inc.*, No. 5:13-CV-03385, 2014 WL 31344, at *10 (N.D. Cal. Jan. 3, 2014).

The Court agrees with Quince. The Ninth Circuit established in *Kearns v. Ford Motor Co.* that claims relying entirely on a unified course of fraudulent conduct as their basis are said to be "grounded in fraud" or "sound in fraud," such that those claims must satisfy the particularity requirement of Rule 9(b). 567 F.3d 1120, 1125 (9th Cir. 2009). The majority of courts in this district have found that the heightened pleading standard of Rule 9(b) applies "where a Lanham Act claim is predicated on the theory that the defendant engaged in a knowing and intentional misrepresentation." *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 634 (N.D. Cal. 2019) (quoting *23andMe, Inc. v. Ancestry.com DNA, LLC*, 356 F. Supp. 3d 889, 908 (N.D. Cal. 2018)). WSI provides no other reason why the Court should not apply Rule 9(b) other than to say that the Rule does not "categorically" apply to false advertising claims.

Here, WSI alleges that "Quince knew its advertising was false or misleading, or it acted with reckless disregard for, or willful blindness to, the false or misleading nature of its

advertising," which aligns with a claim sounding in fraud. Compl. ¶ 98. Accordingly, Rule 9(b) is therefore applicable to all of WSI's claims.

**B. Lanham Act and California False Advertising Claims**

Under the Lanham Act, a prima facie case requires a showing that (1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product. *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1052 (9th Cir. 2008) (citation omitted).

Accordingly, a challenged advertising statement is actionable only if it is "literally false, either on its face or by necessary implication" or "literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *see also Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1182 (N.D. Cal. 2007) (Analysis under California's false advertising law is "substantially congruent."). This analysis requires considering the advertisement in its "full context." *Id.* A message can be literally false only if it is "unambiguous;" if it "is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false." *Blue Lake Rancheria v. Kalshi Inc.*, No. 25-CV-06162-JSC, 2025 WL 3141202, at *2 (N.D. Cal. Nov. 10, 2025), *aff'd in part, rev'd in part and remanded*, No. 25-7504, 2026 WL 2728466 (9th Cir. Sept. 16, 2026) (citation omitted). When "the allegedly misleading statement is not literally false, the plaintiff is required to allege specific facts showing that the statement actually conveyed the implied misleading message thereby deceiving a significant number of people." *Stiles v. Wal-Mart Stores, Inc.*, No. 2:14-CV-2234, 2015 WL 5173060, at *4 (E.D. Cal. Sept. 2, 2015) (citing *William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995)).

Similarly, false advertising claims under California's FAL and UCL require that

advertising be deceptive to a "reasonable consumer." *McGinity v. P&G*, 69 F.4th 1093, 1097 (9th Cir. 2023). This standard requires more than "a mere possibility that the [advertisement] might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Id.* (internal quotations and citation omitted). Rather, the reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016).

**1. Falsity of Products' Certifications or Material Descriptions**

WSI alleges Quince falsely represented that certain towels and bedsheet sets were made of GOTS-certified cotton, and that the bedsheets were made of organic long-staple cotton. Compl. ¶¶ 81–85. In support of these allegations, WSI relies entirely on statements made in the Wirecutter Article. *Id.*, Ex. B, ECF No. 1-2.

The Court finds these allegations fail to meet Rule 9(b)'s particularity requirements. As to the towels, WSI has not alleged specific facts as to when, where, or what Quince said as to the GOTS-certification of its towels. As to the bedsheets, the statements made in the Article alone are insufficient to plausibly allege the falsity of the bedsheets' GOTS certification or Quince's claim that the bedsheets' cotton is both organic and long-staple. First, the Article itself states that GOTS confirmed the certification as valid. *Id.* at 12. Further, WSI has not pointed to any actionable advertisement by Quince representing that its bedsheets were made of GOTS-certified cotton, nor can WSI base a false advertising claim solely on statements made in a sewn-in label that a consumer would not see until after purchasing the product, as such labels are not considered advertising. *See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003) (statements "not made in promotion or marketing […] not actionable as commercial advertising or promotion under the Lanham Act").

Finally, WSI relies on mere skepticism from the Article's author to allege that the bedsheets' cotton cannot be both organic and long-staple. The Article's expert opines that organic and long-staple cotton would be "extremely expensive" and further contemplates the accuracy of

United States District Court
Northern District of California

Quince's organic cotton certificate. Compl., Ex. B at 12–13, ECF No. 1-2. Neither the Article's expert nor WSI represent to have actually tested Quince's cotton or investigated its origins. Without any facts to support the Article's speculations, WSI's allegations regarding Quince's bedsheets are conjecture and not enough to state a claim.

**2. Falsity of Statements that Quince Products are the "Same" as WSI's**

WSI alleges Quince falsely and misleadingly represents that its products are the "same" as or comparable to WSI's in Quince's Beyond Compare charts and social media ads. Quince argues that it never advertises that its products are the "same" as WSI's and that, in any case, WSI fails to sufficiently allege that any of Quince's comparative advertising is false or misleading. WSI's Complaint offers three examples where Quince equates its products to WSI's:

***Beyond Compare Charts.*** WSI takes issue with Quince's use of its Beyond Compare charts for a sectional, chandelier, bed, sconce, and two rugs. Compl. ¶¶ 8, 12, 28, 34, 39, 44, 49. WSI claims that these charts are literally false because they state or imply that Quince sells the same products that WSI sells but for less. Quince disagrees and argues that, when read in context, the Beyond Compare charts do not state or imply that Quince sells the same products as WSI.

The Court agrees with Quince. WSI fails to point to any express or implied statement that Quince's products are the "same" as WSI's in the Beyond Compare charts. When viewing the full context of the charts, the charts simply compare the two companies' products (as well as those of other companies) side-by-side and indicate how the products are similar but also different. The rest of the product's webpage contains repeated use of the term "our," such as marketing Quince's products as part of "*our* collection," as being made to order by "*our* team of skilled artisans." *Mot.* 12. Consequently, the Court finds that WSI has not plausibly alleged that the charts are literally false, or that a reasonable consumer would be misled into believing that Quince and each of its competitors in the charts are selling identical products.[2]

[2] WSI also points to the statement on Quince's website that "Our Factories Produce for Well-Known Luxury Brands," and argues that this statement deceives a reasonable consumer into believing that Quince sells literally the same products as WSI because the companies use the same factories.

***"Like" Pottery Barn/West Elm/Williams Sonoma.*** WSI also alleges that two social media ads comparing Quince's products to those of the WSI brands (e.g. "Like Pottery Barn rugs, but half the price") "falsely suggest[] consumers can purchase the same items at dramatically reduced prices." Compl. ¶ 16. Quince argues that WSI is mistaken, because the ads merely say that Quince's products are "like" or "similar to" WSI's, not that they are the "same." WSI did not address Quince's argument in its opposition.

The Court agrees with Quince's definition of "like" as "similar to," and finds it implausible that a reasonable consumer would conclude based on these "like" statements that Quince and WSI sell identical products.

***"Plus, it's 50% less than other brands for the same product."*** WSI also challenges an Instagram ad featuring a woman swapping out her bedding for a Quince duvet cover. In the ad, the woman states that "I couldn't justify spending $300 on bedding at Pottery Barn," and that she purchased a duvet cover from Quince because "it's 50% less than other brands for the same product." *Id.* ¶ 61. WSI alleges that the latter statement is literally false because Pottery Barn does not sell the same duvet cover as Quince. *Id.* ¶ 65. Quince argues that the context surrounding the "same product" statement demonstrates that it is not false or misleading. In the ad, the woman states that the duvet cover is "from Quince." *Id.* ¶ 61. Further, overlaid text in the ad states that Quince's duvet cover is "50% LESS than Pottery Barn and [Restoration Hardware]," *id.*, to which Quince argues that reasonable consumers know that Pottery Barn and Restoration Hardware, which are separate companies, sell distinct products. As such, Quince asserts that the reasonable interpretation of this ad is that Quince sells the same *type* of product—*i.e.*, duvet covers—as WSI but not the exact same products.

The Court agrees with Quince and finds that WSI has not plausibly alleged literal falsity by way of this ad. The Court is persuaded that the fuller context of the ad supports Quince's

---

The Court declines to address WSI's argument at this time. WSI did not plead this theory in its Complaint nor, in any event, specific facts to show that a reasonable consumer would be misled by this statement.

argument that a reasonable consumer would interpret the statement as meaning that Quince sells the same types of products as WSI or that Quince sells products similar to those sold by WSI, rather than that Quince and each competitor mentioned in the ad sell identical products. At a minimum, this ambiguity as to what "same" means in Quince's ad is enough to defeat WSI's theory that the statement is literally false.

WSI may have a more viable argument that the "same product" statement is misleading to a large section of reasonable consumers, but WSI did not allege specific facts showing that the statement had the tendency to confuse or deceive a substantial segment of its audience nor raise this argument in its opposition. *See Stiles v. Wal-Mart Stores, Inc.*, No. 2:14-CV-2234, 2015 WL 5173060, at *4 (E.D. Cal. Sept. 2, 2015) (citing *William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995)) ("Where[] the allegedly misleading statement is not literally false, the plaintiff is required to allege specific facts showing that the statement actually conveyed the implied misleading message thereby deceiving a significant number of people."). Consequently, the Court finds that WSI also has not plausibly alleged that the ad was misleading.

**3. Failure to Allege Inferiority of Quince's Products**

Throughout its false advertising claims, WSI alleges that Quince's comparative advertising is false and misleading because Quince represents that its products are equivalent to those of WSI, when, in reality, Quince's products are of inferior quality. *E.g.*, Compl. ¶¶ 19, 58, 66. Quince argues that WSI fails to allege any facts to support this conclusory assertion. WSI did not proffer any facts or evidence regarding the quality of its own products, much less to support that the quality of Quince's products is specifically inferior to that of WSI's products. WSI cites only a single customer review expressly comparing Quince and WSI, in which the reviewer describes a Quince Sectional as being not "comparable to . . . [Pottery Barn]" and states "in this case you truly get what you pay for." *Id.* ¶ 32. Quince points out that this product otherwise received largely positive reviews, and, in any case, one negative review is insufficient to support an inference that WSI's sectional is objectively superior to Quince's. Mot. 15.

The Court agrees with Quince. Without any points of reference, the Court has no way of

determining whether Quince's products are inferior to WSI's, and thus WSI has not alleged a plausible claim of false advertising based on false and misleading quality comparisons. *See Beachbody, LLC v. Universal Nutrients, LLC*, No. CV 16-02015-R, 2016 WL 3912014, at *4 (C.D. Cal. July 18, 2016) ("Simply making the conclusory statement that Defendants' [products] are incomparable to Plaintiff's [products] does not establish a plausible claim for false advertising."). The Court cannot plausibly infer from a handful of negative reviews that Quince's products are of inferior quality, particularly in light of the number of positive reviews and without any facts as to the comparable quality of WSI's products.

Even had WSI alleged facts to show that Quince's products were of inferior quality, WSI still has not sufficiently pled that Quince's statements or advertisements had the tendency to mislead as to Quince's comparable quality. The Court also cannot plausibly infer from one lone customer review comparing Quince and WSI's sectionals that even this specific customer was *misled* by Quince, let alone that a significant segment of customers was as well. *See Okyn Holdings Inc. v. Hori (U.S.A.) Inc.*, No. 2:21-CV-09213-AB-PDX, 2022 WL 21805919, at *5 (C.D. Cal. Feb. 24, 2022) ("Plaintiff cannot 'cherry pick' six negative online consumer reviews [and] expect the Court to ignore the overwhelming number of positive reviews to conclude the Complaint plausibly alleges a substantial portion of Defendant's customers have been misled.").

Accordingly, the Court finds that WSI failed to sufficiently allege that Quince's products are "inferior" to WSI's or that Quince's statements or advertisements had a tendency to mislead consumers about the comparable quality of Quince's products.

**4. Failure to Allege Misrepresentation of WSI's Prices**

Next, Quince argues that WSI fails to plausibly allege false advertisement of WSI's prices for various home goods. WSI alleges that Quince lists false prices for WSI products in the Beyond Compare charts to magnify the savings consumers can expect by purchasing from Quince. Compl. ¶¶ 10–11, 33, 38, 43, 48, 53. For example, Quince advertises a handwoven jute rug that it sells for $299.90, and lists a Pottery Barn rug in the Beyond Compare chart as selling for $599.90. *Id.* ¶ 44. WSI alleges that this advertisement is false and misleading because Pottery Barn's

"Haven Jute Braided Rug" with similar attributes as Quince's rug actually costs $399 (rather than $599.90). *Id.* ¶ 48. Quince argues that WSI's argument fails because the $399 "Haven" rug is not comparable to Quince's; Quince's rug is handwoven, whereas the "Haven" rug is not. Quince instead points to Pottery Barn's $599 "Delmont" rug, which has the same attributes as Quince's rug and is handwoven.

Further, Quince argues that WSI mistakenly alleges only the *current* prices of WSI's products at the time it filed the Complaint and fails to acknowledge that prices change. Quince points out that its charts disclose that Quince gathered competitor pricing information within a specific timeframe and that pricing is subject to change, and, as such, its charts accurately list prices for comparable products. WSI counters that whether the $399 "Haven" rug or the $599 "Delmont" rug is more similar to Quince's is a factual dispute that the Court cannot decide at this junction. WSI also claims that Quince's disclosure that "pricing is subject to change" is an admission that the listed competitor pricing is false and misleading, because consumers rely on the prices listed in the Beyond Compare charts when making purchasing decisions.

The Court is persuaded by Quince's arguments. Quince's motion identifies WSI products similar to Quince's with prices that match those listed in the Beyond Compare charts, undermining WSI's allegations of falsity. Mot. 16–17. That WSI points to other similar WSI products with lower prices does not make it plausible that Quince advertised false prices. Nor has WSI pled specific facts to show that a reasonable consumer would be misled into believing that WSI sells no other similar products, at lower or higher prices, than the WSI product listed in Quince's chart.

As the Court does not find Quince's display of WSI's prices in its Beyond Compare charts to be ambiguous, it need not further consider Quince's information icon disclosing the recency of the price information. *See Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778 (9th Cir. 2024) ("[A] product's back label may be considered at the pleadings stage if the front label is ambiguous.") (citation omitted). Even if it did, the Court does not see how this disclosure would be an "admission" of falsity as WSI so argues. Rather, the disclosure informs customers how recently Quince captured the competitor pricing data, acknowledging that prices may have

changed over time, and "remove[s] any reasonable possibility that consumers would be misled." *Id.* (citation omitted); *see also Moreno v. Vi-Jon, Inc.*, No. 20CV1446 JM(BGS), 2021 WL 807683, at *5 (S.D. Cal. Mar. 3, 2021) ("Qualifying language in the challenged advertising making the meaning of the alleged misrepresentation clear have led district courts within the Ninth Circuit to grant motions to dismiss.") (collecting cases). As such, the Court does not find it plausible, even if the pricing information was ambiguous, that a reasonable consumer would be misled by the contents of this disclosure.

**5. Failure to Allege Lack-of-Substantiation Claims**

Quince contends that WSI's lack-of-substantiation theory also fails. WSI alleges that "Quince's statements are false and misleading because Quince never identifies the purportedly competing [WSI product], nor does it even attempt to substantiate its claim that any [WSI product] is the same, despite being required to do [so] before making the false comparison." Compl. ¶ 41; *see also id.* ¶¶ 9, 13, 31, 36, 41, 46, 51, 59, 67, 73. Courts in the Ninth Circuit have routinely held that a plaintiff cannot sustain false advertising claims based solely on failure-to-substantiate statements made in the advertisements. *Kurin, Inc. v. ICU Med.*, Inc., No. 8:24-CV-00564, 2024 WL 5416672, at *7 (C.D. Cal. Nov. 8, 2024) (collecting cases). WSI does not dispute this rule but claims that it is not asserting a lack-of-substantiation claim.

The Court agrees with Quince. Under Rule 9(b)'s heightened pleading standard, a plaintiff must particularly allege falsity of the challenged statements and not just that a defendant's statement lacked support. *Eli Lilly & Co. v. Adonis Health, Inc.*, No. 25-CV-03536-JST, 2025 WL 2721684, at *7 (N.D. Cal. Sept. 24, 2025) (citing *Strategic Partners, Inc. v. FIGS, Inc.*, 2019 WL 12435672, at *6 (C.D. Cal. Aug. 19, 2019)). In its Complaint, WSI has not alleged anything beyond that Quince has neither identified the comparable WSI products in its ads and Beyond Compare charts nor substantiated its claims that WSI products are similar or comparable. Without providing specific facts as to the falsity of Quince's statements that WSI challenges here, WSI's allegations are conclusory and "do nothing to support or prove the falsehood of the claims." *Id.* (citation omitted). As such, WSI's lack-of-substantiation claims lack the particularity required

under Rule 9(b) and fail to state a claim for relief.

### 6. Failure to Allege False Advertisement Concerning Product Reviews

Lastly, WSI claims that Quince falsely and misleadingly advertises product reviews. The Complaint identifies several advertisements or practices involving Quince's product reviews that are allegedly false and misleading:

***"[Quince's] Duvet Cover Set Has 1,000+ 5-Star Reviews."*** In a social media ad, Quince states that its duvet cover set "has 1,000+ 5-star reviews." Compl. ¶ 69. WSI alleges that this statement is false and misleading because the product had fewer than one thousand five-star reviews in September and October 2025, when the ad was running. *Id.* ¶ 75 (alleging 885 five-star reviews as of September 2025, and 918 reviews as of October 2025). Quince argues that WSI simply miscounted and that anyone can verify the truth of Quince's statement because each review on Quince's publicly available website is dated; however, Quince did not offer judicially noticeable documents showing that WSI is incorrect. Further, even if WSI were correct, Quince argues that WSI fails to explain how such a discrepancy is material or how it injured WSI.

In accepting WSI's allegations as true, the Court finds that WSI plausibly alleged falsity regarding the number of five-star reviews Quince's duvet cover set received when the ad was running in September and October 2025. However, WSI has failed to plead facts as to how this false statement is material or how it injured WSI, and thus such allegations are still insufficient to state a claim under Rule 12(b)(6).

***"200,000 5-star reviews can't be wrong."*** WSI also alleges another social media ad in which Quince states that "200,000 5-star reviews can't be wrong" is false and misleading because the Quince cookware set depicted in the ad only had 37 reviews. Compl. ¶ 93. Quince counters that the ad plainly refers to the total number of reviews all Quince products have received, because the alleged statement appears immediately below a link to Quince's website.

The Court agrees with Quince that the statement, if referring to reviews of all of Quince's products, would not be literally false. The Court does, however, find it ambiguous when viewing the ad in its full context whether the "200,000 5-star reviews" statement refers to the cookware set

or to Quince as a whole. Nonetheless, WSI failed to plead any specific facts to plausibly show that a significant segment of consumers would be misled by this statement, nor any facts as to why this ambiguity is material or how it injured WSI. As such, these allegations are also insufficient to state a claim under Rule 12(b)(6).

***Product Ratings.*** WSI alleges that it is false and misleading for Quince to represent at the top of the product page that its duvet cover received a rating of "★★★★★ (447 REVIEWS)," because that label implies the product received 447 5-star reviews. Compl. ¶ 87. Quince argues that this interpretation is implausible, as the stars accurately represent the average rating of 4.7 rounded to the nearest star, and other parts of Quince's website clearly show that the product received an average of 4.7 stars.

In viewing the additional context immediately surrounding the allegedly false statement, the Court agrees with Quince. The exact product rating is conveniently available to customers before visiting the product page, as well as displayed at the top of the review section of each product page itself. It is, thus, implausible that most reasonable consumers would not understand that the stars displayed at the top of the product page are rounded and be misled given the surrounding context. Consequently, WSI has not plausibly alleged that the product rating is false or likely to mislead reasonable consumers.

***Review Incentives.*** Finally, WSI also alleges that Quince's product reviews are false and misleading because Quince fails to disclose that it incentivizes customers to submit reviews. Compl. ¶ 91. WSI argues that this omission is deceptive, because it gives consumers the false impression that a high number of unbiased customers chose to post positive reviews. Quince counters that there is nothing deceptive about the review incentives, because customers receive the incentive simply by writing a review, regardless of whether the review is positive or negative. Quince also discloses the terms of the incentive to customers on its website.

False advertising claims under the Lanham Act may only be predicated on affirmative statements, not on pure failure to disclose. *See In re Outlaw Lab'y, LLP*, 463 F. Supp. 3d 1068, 1081 (S.D. Cal. 2020), *on reconsideration,* No. 3:18-CV-0840-GPC, 2020 WL 3840559 (S.D. Cal.

July 8, 2020) ("[A] Lanham Act violation cannot be predicated on an omission.") (citing *Universal City Studios, Inc. v. Sony Corp. of Am.*, 429 F. Supp. 407, 410 (C.D. Cal. 1977) ("[n]o reference to omissions of material fact or obligation to disclose such as is found in other federal statutes ... appears [in the Lanham Act]")). WSI relies on a single case in this district opining that the Lanham Act, in its inherent breadth, may "potentially" cover the conduct of incentivizing online reviews. *Vitamins Online, Inc. v. Heartwise, Inc.*, No. 2:13–CV–982–DAK, 2016 WL 538458, at *7 (D. Utah Feb. 9, 2016) (deferring summary judgment ruling as to whether defendant's alleged practices of having employees upvote positive reviews for greater visibility, offering free products or gift cards to customers for reposting favorable reviews, and editing reviews before posting was an actionable violation under the Lanham Act).

The Court finds the facts of *Vitamins Online* distinguishable and declines to find Quince's alleged omissions regarding its incentivized reviews actionable under the Lanham Act at this juncture. As Rule 9(b) applies, the Court therefore finds that WSI has not alleged any affirmative statement that is false or misleading under Rule 9(b) heightened pleading standard.

**C. Limiting the Case to Examples in Complaint**

WSI alleges that Quince has conducted "a widespread false advertising campaign against WSI," and argues that the Court should not limit this case to the examples it cited in the Complaint. Compl. ¶ 7. Quince contends that WSI fails to allege any facts to support that sweeping claim under Rule 9(b) and thus the Court should deny WSI's request. Mot. 22–23. Specifically, Quince argues WSI does not plausibly allege that Quince's ads are false and misleading for every single product that competes with WSI, nor has WSI pled any facts to support a plausible inference that the specific examples identified in the Complaint are indicative of a larger scheme. WSI counters that even if Rule 9(b) applies, Quince's false advertising campaign spans several years and that Quince is better situated to know the content and context of its ads, such that WSI should not be required to specifically allege each and every false advertisement.

The Court agrees with Quince. WSI has alleged falsity as to a broad range of conduct (not

limited to Quince's social media ads, certifications, and various aspects of Quince's website) and on the bases of multiple disparate theories (such as comparisons regarding quality, the accuracy of displayed reviews or pricing, and the nature of Quince's incentivized review system). Even if the Court attempts to narrow its focus to ads or statements by Quince that explicitly mention the WSI brands, much of Quince's allegedly false advertising is based on comparisons between specific Quince and WSI products, and determining whether these statements are false requires varying context-specific analysis that would be unique to each advertisement and product. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) ("When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context.").

The Court, consequently, finds that WSI has not alleged facts to plausibly show that all of Quince's false advertisements are similar such that the Court can consider them as a whole. Nor does the Court find that WSI has sufficiently alleged representative examples of this larger fraudulent scheme under Rule 9(b)'s heightened particularity requirements. The cases relied on by WSI where representative examples of fraudulent schemes are accepted as sufficient involved schemes that are far less varied and expansive as the advertising campaign WSI alleges here. *See Hawkins v. Medtronic, Inc.*, 62 F. Supp. 3d 1144, 1156 (E.D. Cal. 2014) (plaintiff need not plead every false statement involving the off-label use of a single medical device to satisfy Rule 9(b)); *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 924 (N.D. Cal. 2013) (plaintiff sufficiently stated a UCL claim with particularity by providing representative instances of defendant's scheme to unilaterally omit information regarding marked-up mortgage fees).

As such, the Complaint does not sufficiently meet Rule 9(b)'s particularity requirements to allege Quince's larger scheme of false advertising. The Court acknowledges that WSI need not plead every instance of Quince's alleged false advertising as that would run counter to the directives of Rule 8(a)(2). In its current form, however, the Complaint does not indicate any parameters or limitations as to this amorphous false advertising scheme that WSI seeks to put Quince on notice of. Nor is Quince better situated to know the content of all of its advertisements, as Quince's website and advertisements are publicly available. The Court declines at this juncture

to extend this case to instances of Quince's advertising not specified in WSI's Complaint, but grants WSI the opportunity to amend as to this allegation.

**D. California State Law Claims**

Quince also moves to dismiss WSI's state law claims and argues that they fail as a matter of law for several independent reasons. WSI's Complaint alleges that Quince violated California's UCL and FAL, as well as that WSI is owed restitution based on quasi-contract because Quince has unjustly received and retained a benefit at WSI's expense.

First, Quince argues that WSI's UCL and FAL claims fail because WSI has failed to allege reliance and thus lacks standing. Quince also argues that, as WSI's underlying Lanham Act claim was insufficiently pled, WSI's UCL claim necessarily fails as well. Second, Quince argues that WSI's restitution based on quasi-contract claim fails because WSI has neither alleged the existence of a quasi-contractual relationship nor that it lacks an adequate remedy at law. The Court addresses each of Quince's arguments in turn.

**1. UCL and FAL Claims**

The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "The FAL prohibits 'untrue or misleading' statements in the course of business." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015) (quoting Cal Bus. & Prof. Code § 17500). The language of these two statutes is "'broad' and 'sweeping' to 'protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.'" *Pulaski*, 802 F.3d at 985 (citation omitted).

**a. Standing**

The parties dispute whether a plaintiff must allege actual reliance on a defendant's allegedly misleading statement to have standing to seek relief for UCL and FAL claims based in fraud. Quince argues that competitor plaintiffs such as WSI must allege reliance on the allegedly false statement under California law, and, accordingly, WSI's false advertising claims under California's FAL and UCL fail because WSI has not alleged reliance. Reply 13–14.

"Whether competitors must demonstrate their own reliance on a defendant's allegedly misleading statement remains an open question." *Lona's Lil Eats, LLC v. DoorDash, Inc.*, No. 20-CV-06703-TSH, 2021 WL 151978, at *10 (N.D. Cal. Jan. 18, 2021) (citations omitted). "Federal Courts sitting in California have disagreed [] about whether competitor plaintiffs must plead their own reliance, or whether pleading customer reliance is sufficient for fraudulent business practices claims brought by competitors." *L.A. Taxi Coop. v. Uber Techs., Inc.*, 114 F.Supp.3d 852, 866 (N.D. Cal. 2015).

Quince urges this Court to adopt the so-called "majority view," which would require that all plaintiffs (including competitor plaintiffs) allege their own reliance on challenged statements to support UCL and FAL claims sounding in fraud. *See, e.g.*, *Cascade Trade, LLC v. Cascade Mobility, Inc.*, No. 8:23-CV-02121-FWS-DFM, 2024 WL 5411308, at *6 (C.D. Cal. Nov. 12, 2024) ("A majority of district courts within the Ninth Circuit have held that competitors must allege that they themselves actually relied on the allegedly false statements, and may not rely on the actual reliance of third parties."); *Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, 2021 WL 148063, at *6 (S.D. Cal. Jan. 15, 2021) ("In this case, all of Plaintiff's claims under the FAL and the three prongs of the UCL are based on fraud. Therefore, in reliance on the majority of the district courts to consider this issue, the Court concludes that Plaintiff must allege its actual reliance to support UCL and FAL claims sounding in fraud.").

The majority view that plaintiffs generally must show actual reliance emerges from *In re Tobacco II Cases*, 46 Cal. 4th 298, 93 Cal.Rptr.3d 559, 207 P.3d 20 (2009) and its progeny *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011). In 2004, Californian voters passed Proposition 64, "which restricts standing for individuals alleging UCL and FAL claims to persons who 'ha[ve] suffered injury in fact and ha[ve] lost money or property *as a result of* the unfair competition.'" *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013) (emphasis added) (quoting Cal. Bus. & Prof. Code §§ 17204 (UCL), 17535 (materially identical standard under the FAL)). The California Supreme Court, in *In re Tobacco II* and *Kwikset*, recognized that Proposition 64's intent was to "curtail the prior practice of filing

suits on behalf of clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealings with the defendant[,]" and held that Proposition 64 narrowed the reach of fraud-based claims under the UCL and FAL. *Kwikset*, 51 Cal. 4th at 321. Specifically, the California Supreme Court explained that "[t]he phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation." 51 Cal. 4th at 326 (citation and internal quotations omitted). As "reliance is the causal mechanism of fraud," the *Kwikset* court thus held that the language "as a result of" requires that a plaintiff show actual reliance on the misrepresentations. *Id.* This causation requirement also "applies with equal force to consumer cases brought under the 'unlawful' and 'unfair' prongs when the claims are based on misrepresentation." *Allergan USA Inc. v. Imprimis Pharms., Inc.*, No. SACV171551DOCJDEX, 2017 WL 10526121, at *13 (C.D. Cal. Nov. 14, 2017) (citing *Kwikset*, 51 Cal. 4th at 326, n. 9).

However, *In re Tobacco* and *Kwikset* were both brought by consumer plaintiffs. Federal district courts have subsequently struggled with the application of the reliance requirement in cases between competitor parties, and there has yet to be a California court decision explicitly on this point. WSI argues that the tide is changing for the "majority view," and points to a number of recent decisions from this district accepting the "minority view" that a competitor plaintiff can have standing under the UCL and FAL "without alleging its own reliance, as long as the plaintiff has alleged a sufficient causal connection" between its injury and a competitor's alleged fraudulent business practices. *KT Enters. LLC v. Comp360, LLC*, 751 F. Supp. 3d 999, 1003 (C.D. Cal. 2023) (internal quotations omitted); *see also Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, No. 21-CV-01280-JST, 2021 WL 11593043, at *6 (N.D. Cal. Aug. 16, 2021) ("[A]fter reviewing recent cases that have adopted 'the minority view,' the Court is persuaded to reconsider its prior analysis. The Court now finds the reasoning of courts holding that '[a] non-consumer plaintiff can allege false advertising claims under the UCL and FAL without alleging its own reliance, as long as the plaintiff has alleged a sufficient causal connection' to be persuasive and correct."); *Lona's Lil Eats*, 2021 WL 151978, at *12 ("Based on these reasons, the Court agrees

United States District Court
Northern District of California

with the minority view. A non-consumer plaintiff can allege false advertising claims under the UCL and FAL without alleging its own reliance, as long as the plaintiff has alleged a sufficient causal connection."); *Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, No. 20CV1765-GPC(BGS), 2021 WL 1541649, at *8 (S.D. Cal. Apr. 20, 2021) ("After a careful review of the recent caselaw and the California legislative's intent that the substantive reach of the claims under UCL and FAL be "expansive", [] the Court adopts the minority view) (internal citation omitted); *Allergan USA Inc.*, 2017 WL 10526121, at *13 ("The Court declines to extend the California Supreme Court's reasoning in *Kwikset* to this case [involving] claims between competitors.").

In adopting the minority view, the courts in these cases recognized that false advertising claims between competitors are fundamentally different from the same claims made by consumers. While consumers are directly harmed by being deceived by false advertising and purchasing a product or service as a result, competitor plaintiffs are instead indirectly harmed through lost sales and market share due to the defendant's deceptive activity diverting their customers. *Lona's Lil Eats*, 2021 WL 151978, at *12 (citation omitted). Therefore, if a competitor plaintiff had to prove that the harm they suffered is the result of their own reliance (rather than a consumer's reliance) on their competitor's false advertising, "it would be hard to imagine when a competitor would be able to assert a false advertising claim." *Id.* (citation omitted). Extending *Kwikset* to all cases and requiring competitor plaintiffs to prove actual reliance would thus not serve Proposition 64's intent of preventing actions by plaintiffs who have not suffered an actual injury from the alleged false advertising. *Allergan USA Inc*, 2017 WL 10526121, at *13. Further, the California Supreme Court made clear in *Kwikset* that the purpose of the false advertising laws "is to protect both consumers *and competitors* by promoting fair competition in commercial markets for goods and services." 51 Cal. 4th at 320 (emphasis added). A rule requiring all plaintiffs to prove actual reliance would "impose a superficial hurdle on competitor plaintiffs seeking to stop or recover damages caused by their competitor's false advertising," and thus render the protections afforded under the UCL and FAL to competitors

meaningless. *Allergan USA Inc*, 2017 WL 10526121, at *13.

The Court finds the reasoning underlying the minority view persuasive. Under the minority view, "[a] non-consumer plaintiff can allege false advertising claims under the UCL and FAL without alleging its own reliance, as long as the plaintiff has alleged a sufficient causal connection." *Lona's Lil Eats, LLC*, 2021 WL 151978, at *12. Here, WSI has alleged that the parties compete for customers at least as to a subset of their products, and that Quince's false and misleading advertising diverts WSI's customers and diminishes WSI's goodwill. *See generally* Compl. WSI has also shown that Quince's comparative advertising and Beyond Compare charts expressly mention WSI's brand and products by name. *E.g.*, *id.* ¶¶ 12, 16, 29. Although WSI has neither plausibly alleged that Quince's advertising was false nor pled any empirical data to prove its economic injury, WSI has at this stage sufficiently alleged a chain of inferences showing how Quince's false advertising could harm WSI. *See Scilex Pharms. Inc.*, 2021 WL 11593043, at *3 ("A party may prove its injury (1) by using lost sales data, that is 'actual market experience and probable market behavior,' or (2) 'by creating a chain of inferences showing how defendant's false advertising could harm plaintiff's business.") (citations omitted). Based on these allegations, WSI has sufficiently alleged a causal connection between the alleged false advertising and WSI's injury, and therefore has standing to sue under the UCL and FAL.

**b. Unlawful or Unfair Conduct**

Next, Quince argues that WSI's claims under the unlawful and unfair prongs of California's UCL fail because WSI alleges no wrongful conduct beyond false advertising.

First, the unlawful prong of the UCL requires a violation of an underlying law. Quince argues that should WSI's Lanham Act and FAL claims fail, then WSI's UCL claim based on unlawful action also fails as a matter of law. As this Court has found that WSI inadequately pled the false advertising element of its Lanham Act and FAL claims, *see* Part III(B), and as WSI has not alleged Quince violated any other statute, WSI's UCL claim under the unlawful prong necessarily fails as well.

Second, the unfair prong requires allegations of conduct that threatens violation of an

antitrust law, violates the policy or spirit of one of those laws, or otherwise significantly threatens or harms competition as a whole. *Woodway USA, Inc. v. LifeCORE Fitness, LLC*, 2025 WL 1490301, at *4 (S.D. Cal. May 23, 2025). Quince contends that WSI does not meet this requirement because it only alleges harm to itself, not to competition generally. WSI argues its allegations that "Quince broadly applies its unfair advertising across the relevant product segments and is not limited to conduct specific to WSI" plausibly show significant threat or harm to competition. Opp. 23.

The Court finds Quince's arguments more persuasive. As Quince observes, WSI does not specifically allege any harm to competition as a whole. The Complaint does state that Quince's conduct "significantly threatens or harms competition," but this allegation is conclusory without any supporting facts. Compl. ¶ 111. That Quince's advertising involves many types of products and mentions multiple competitors, without more, does not plausibly show that Quince's conduct is per se harmful, and less so that the threat or harm to competition is *significant*. Consequently, the Court agrees with Quince that WSI's UCL claim under the unfair prong fails to allege harm to competition.

### 2. Restitution Based on Quasi-Contract

Finally, WSI seeks restitution based on quasi-contract of the benefits that Quince received through its alleged misconduct. Restitution and unjust enrichment describe the theory underlying a claim that "a defendant has been unjustly conferred a benefit "through mistake, fraud, coercion, or request." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citing 55 Cal. Jur. 3d Restitution § 2). The return of that benefit is the remedy "typically sought in a quasi-contract cause of action." *Id.*; *see Munoz v. MacMillan*, 195 Cal.App.4th 648, 124 Cal.Rptr.3d 664, 675 (2011) ("Common law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is 'quasi-contract.' ").

#### a. Existence of a Quasi-Contractual Relationship

First, Quince argues that WSI fails to state a claim for restitution based on quasi-contract

by failing to allege any "prior relationship" between WSI and Quince on which to invoke a quasi-contract theory of liability. *Spice Jazz LLC v. Youngevity Int'l, Inc.*, 2020 WL 1180725, at *5 (S.D. Cal. Mar. 11, 2020) ("An unjust enrichment theory cannot exist without a prior relationship between the parties."). WSI counters that California courts and the relevant jury instruction on restitution based on quasi-contract do not require a relationship between the parties. *Kossian v. Am. Nat'l. Ins. Co.*, 254 Cal. App. 2d 647, 650 (1967) (stating that "there need be no relationship" between the parties for restitution based on quasi-contract); CACI No. 375 (no instruction that there must be a relationship between the parties). WSI argues that it is enough that it notified Quince of its false advertising and that Quince unjustly received benefits owed to WSI.

The Court concludes that WSI has failed to allege a quasi-contract between the parties. Although the cases cited by WSI do not purport to require a direct or contractual relationship between the parties, there is some sufficient affiliation or connection between the parties in those cases that the courts found supported an "equitable obligation imposed by law." *Kossian*, 254 Cal. App. 2d at 648–50 (plaintiff hired to clean up fire damage debris from property for which defendant was beneficiary of first deed of trust and of fire insurance policies, and who had been compensated in part for removal of such debris); *see also Pro. Tax Appeal v. Kennedy-Wilson Holdings, Inc.*, 29 Cal. App. 5th 230, 241, 239 Cal. Rptr. 3d 908, 917 (2018) (plaintiff entered contract with lot owner to obtain property tax reductions that defendants collected after acquiring the property and "unjustly retained the full benefit of the reduction in taxes owed").

That the parties are competitors and WSI alleged that Quince was on notice of WSI's accusations of false advertising against it is too attenuated a connection to support WSI's claims that a quasi-contract exists. *See Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 685 (9th Cir. 2009) (connection between employees of Wal-Mart's foreign suppliers and Wal-Mart "too attenuated to support an unjust enrichment claim"); *Dairy, LLC v. Milk Moovement, Inc.*, No. 2:21-CV-02233 WBS AC, 2022 WL 2392622, at *8 (E.D. Cal. July 1, 2022) (in a case between competitor parties, plaintiff did not sufficiently allege a relationship "upon which a quasi-contract claim could be based"). Further, WSI's unjust enrichment allegations are "inextricably intertwined" with its false

advertising claims and "do not give rise to a separate theory of quasi-contract." *See Sugarfina, Inc. v. Sweet Pete's LLC*, No. 17-CV-4456-RSWL-JEM, 2017 WL 4271133, at *6 (C.D. Cal. Sept. 25, 2017). WSI merely incorporates by reference all of its other allegations and alleges in conclusory terms that "Quince has unjustly received and retained a benefit at WSI's expense." Compl. ¶ 115.

As such, WSI has failed to state a claim for restitution based on quasi-contract under Rule 12(b)(6).

**b. Availability of an Adequate Remedy at Law**

Second, Quince argues that WSI's restitution claim independently fails because WSI requests actual damages and thus cannot allege that it lacks an adequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). ("[I]t is basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law." (citation omitted)). WSI disagrees and cites a case permitting quasi-contract claims to proceed alongside false advertising claims for actual damages. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 756 (9th Cir. 2015).

As to whether WSI must allege it lacks an adequate remedy at law for its restitution claim, the Ninth Circuit's recent decision in *Sonner v. Premier Nutrition Corp.* is controlling. 971 F.3d 834 (9th Cir. 2020). In *Sonner*, the Ninth Circuit held that "federal courts rely on federal equitable principles before allowing equitable restitution," and, as such, district courts have equitable jurisdiction under federal common law only if the plaintiff has no adequate legal remedy. *Id.* at 845; *see also Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1312–13 (9th Cir. 2022). "For this reason, courts generally require plaintiffs seeking equitable relief to allege some facts suggesting that damages are insufficient to make them whole." *Gibson v. Jaguar Land Rover N. Am.*, LLC, No. CV 20-00769-CJC, 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020) (collecting cases). As such, "a plaintiff must, at a minimum, *plead* that she lacks adequate remedies at law if she seeks equitable relief." *Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 875 (N.D. Cal. 2021) (collecting cases).

Here, WSI is seeking actual damages and has not alleged that it otherwise lacks adequate remedies at law. For this independent reason, WSI's claim for restitution based on quasi-contract warrants dismissal.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Quince's motion to dismiss all of WSI's claims under Rules 9 and 12(b)(6). The Court further grants WSI leave to amend, and any amended complaint must be filed within **twenty-one (21) days** of this Order.

**IT IS SO ORDERED.**

Dated: September 30, 2026

EDWARD J. DAVILA
United States District Judge